KENNETH PHELAN,

      Plaintiff,

-vs-

DR. CHIN,[1] et al.,

      Defendants.

No. 6:10-CV-6344(MAT)
**DECISION AND ORDER**

## I. Introduction

Pro se plaintiff Kenneth Phelan ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that they acted with deliberate medical indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. Plaintiff alleges that while incarcerated at Collins Correctional Facility ("Clinton") he was denied medication and treatment for his migraine headaches.

Defendants have filed a motion seeking dismissal of the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P.") or, in the alternative, summary judgment pursuant to F.R.C.P. 56(c).

---

[1] Plaintiff has filed suit against a "Dr. Chin". Defendants state that upon information and belief, there is no "Dr. Chin" at Collins Correctional Facility. Defendants believe that the intended individual defendant is Kenneth Jin, M.D. ("Dr. Jin") who was assigned to Collins Correctional Facility during the relevant time period. Defendants accordingly have defended this matter on behalf of Dr. Jin.

## II. Background

The following facts—viewed in the light most favorable to Plaintiff—are taken from the complaint and from the parties' submissions in conjunction with Defendants' motion. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) ("For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility.").

Dr. Jin was employed as a doctor by DOCCS and assigned to Collins during the time when Plaintiff was an inmate there (October 2009, through February 2010). Upon his transfer to Collins, Plaintiff's medical records indicated that he has been prescribed Imitrex[2] for migraine headaches.

Plaintiff arrived at Collins on October 1, 2009, with a 30-day supply of Imitrex, an anti-migraine medication. Declaration of Kenneth Jin, M.D. ("Jin Decl."), ¶ 8. Plaintiff used up his 30-day supply in 12 days and, on October 13, 2009, requested more Imitrex. Id., ¶ 9. Plaintiff was counseled by medical staff as to proper use of the medication and given a new 30-day supply, which was intended to last until November 12, 2009. Id., ¶¶ 10-11.

On November 1, Plaintiff again requested a refill of Imitrex, stating he had used up his entire 30-day supply. Id., ¶11.

---

[2] "Imitrex is medically classified as a selective serotonin receptor agonist and presents the possibility of several serious side effects including nausea/vomiting, dizziness and muscle cramping." Jin Decl., ¶ 7.

-2-

Plaintiff was placed on Ibuprofen until November 12, 2009, at which time he was given a 30-day refill of Imitrex, with the proviso that the Imitrex was to be dispensed only by Collins' nursing staff upon Plaintiff's request. Id., ¶¶ 12-13.

On November 18, 2009, Dr. Jin examined Plaintiff at Collins and determined the likely cause of his headaches was a sinus condition, not migraines. Id., ¶ 14. Dr. Jin prescribed Motrin and Nasacort.

Plaintiff again used up his entire 30-day supply of Imitrex in under three weeks. On December 1, 2009, he requested additional Imitrex. Id., ¶ 15.

On December 7, 2009, Plaintiff was issued a misbehavior ticket for violating numerous facility rules, all of which involved the hoarding of food, clothing, and medication. See generally Declaration of Hillel Deutsch, Esq. ("Deutsch Decl."). Specifically, Plaintiff was found to have in his cell "1 messhall spoon, 3 juice containers, 1 salad container, 3 chip bags, 12 salt packets, 1 ketchup packet, 6 sugar packets, 1 milk container, 5 butter cups, 1 extra comb, 2 extra bars of soap, 3 extra [rolls of] toilet paper, 1 extra sheet, 1 extra green towel, 1 piece of torn state towel, 1 fishing pole made from newspaper and green thread, 1 fish line made of green thread, 2 extra undershorts, 3 extra state socks, 3 extra state t-shirts, 2 pages torn from a state library magazine, 1 ibuprofen packet, 12 [pills] of unknown

medicine, possibly Tylenol, 5 antidiarrheal packets and 15 medicine D packets." Deutsch Decl., Exhibit ("Ex.") A.

From December 8, 2009, through December 15, 2009, Plaintiff had no access to Imitrex. During that time, his medical records indicate that he did not complain of headaches. See Jin Decl., ¶ 17 & Ex. A. On January 4, 2010, despite admitting he had no headache, Plaintiff nevertheless requested Imitrex. Id., ¶ 18 & Ex. A.

Based upon his examination of Plaintiff, Plaintiff's lack of headaches when Imitrex was discontinued, and Plaintiff's tendency to hoard medication, Dr. Jin concluded Plaintiff did not medically need Imitrex. Accordingly, he took Plaintiff off Imitrex and continued him on Nasacort and Motrin to address the sinus condition he believed was causing Plaintiff's headaches. Id., ¶¶ 19-20.

Plaintiff, like all other inmates, are permitted to schedule appointments with Dr. Jin, who saw and examined Plaintiff on the only date when he was scheduled for an appointment, November 18, 2009. Plaintiff was seen by staff nurses nearly every day of his incarceration at Collins, and the nurses kept Dr. Jin apprised as to Plaintiff's condition. Id., ¶¶ 21-22.

All of Plaintiff's causes of action against the various Defendants, including those in supervisory positions, stem from Dr. Jin's refusal to continue to provide Imitrex to Plaintiff.

## III. General Legal Principles

### A. 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law; and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).

### B. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Th[is] plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

**C. Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see generally, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 324.

In order to establish a material issue of fact, the nonmovant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e) advisory committee's note on 1963 amendments).

**D.    Construction of Pro Se Pleadings**

Because Plaintiff's complaint alleges civil rights violations, and he is proceeding pro se, the Court "construe his complaint with particular generosity." Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (per curiam) (citing Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999)), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002). Nevertheless, even pro se complaints "relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

**IV. Analysis of Defendants' Motion to Dismiss and Motion for Summary Judgment**

**A.    Claims Against Defendants in Their Official Capacities**

As Defendants argue, Plaintiff's allegations against Defendants in their official capacities must be dismissed. See Davis v. New York, 316 F.3d 93, 102-03 (2d Cir. 2003) ("[T]he dismissal of Davis's claims against the State of New York, the Department, and Attica, and Davis's claims for damages against all of the individual defendants in their official capacities is affirmed, because these claims are barred by the Eleventh Amendment.") (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985); other citations omitted)).

**B. Eighth Amendment: Deliberate Medical Indifference by Dr. Jin, Nurse Goldteck, and Nurse Manning**

The Eighth Amendment protects incarcerated individuals from being subjected to cruel and unusual punishment, including prison officials' deliberate indifference to their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To make out a deliberate medical indifference claim, an inmate must establish an objective as well as a subjective component. First, he must show that, objectively, he suffered from a "serious medical need," i.e., "'a condition of urgency' that may result in 'degeneration' or 'extreme pain,'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). Second, he must show that the defendant subjectively knew of, and disregarded, that serious need, Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005), and that in doing so, the defendant had a culpable state of mind and intended wantonly to inflict suffering. Wilson v. Seiter, 501 U.S. 294, 299 (1991).

The Court assumes arguendo that Plaintiff's migraines were a sufficiently serious medical condition for purposes of the objective prong of a deliberate indifference claim. However, Plaintiff cannot establish the subjective component of his Eighth Amendment claim–i.e., that Dr. Jin acted with a sufficiently culpable state of mind, one that is "more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The Supreme Court has described "deliberate indifference" as the

"equivalent [of] criminal negligence." Id. at 835. Thus, "medical malpractice is . . . insufficient to support an Eighth Amendment" deliberate indifference claim. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

Here, the crux of Plaintiff's claim is that Dr. Jin improperly discontinued his Imitrex without consulting him. Although Plaintiff's medical indifference claim is primarily directed at Dr. Jin, he asserts in his opposition to Defendants' summary judgment motion that Nurse Goldteck refused to give him Imitrex on October 30-31, 2009, for a migraine; and that Nurse Manning refused to give him Imitrex on December 7, 2009, for a migraine. Plaintiff's Declaration, ¶¶ 5, 7.

"It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Joyner v. Greiner, 195 F. Supp.2d 500, 504 (S.D.N.Y. 2002) (citing Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp.2d 303, 309 (S.D.N.Y. 2001) (citing Chance, 143 F.3d at 703)); see also Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Here, Plaintiff's medical and disciplinary records demonstrate that he had a tendency to hoard medication and, despite repeated counseling by Dr. Jin and Clinton medical staff, would not take his medication in appropriate doses. In Dr. Jin's professional opinion, based on his examination of Plaintiff and Plaintiff's tendency to hoard

medication, Plaintiff did not suffer from migraines and, accordingly, did not require a prescription for Imitrex. Dr. Jin's diagnosis was supported by the following factors: (1) while he was not taking Imitrex for a week in December 2009, Plaintiff did not complain of headaches; and (2) on January 4, 2010, Plaintiff admitted to Clinton medical personnel that he did not have a migraine but nevertheless requested Imitrex.

Plaintiff attempts to raise an issue of fact by asserting in his opposition papers that when he was transferred to Southport on January 22, 2010, he was "immediately" placed back on Imitrex because the medical personnel there diagnosed him with migraines. Plaintiff's Declaration, ¶ 15 (citing Exhibit E-10). Plaintiff's Exhibit E-10 is an Ambulatory Health Record dated January 22, 2010, completed by D. Weed, R.N. Under "Chronic Medical Problems", it simply indicates "HA - Migraines", i.e., that Plaintiff self-reported a history of migraines. This record does not indicate that he was diagnosed with migraines.

In any event, even assuming that Plaintiff was diagnosed with migraines at Southport and placed on Imitrex, this at most represents "mere disagreement among professionals [which] does not[,] in and of itself[,] constitute and establish the existence of a medical indifference claim." Williams v. Bailey, 2010 WL 3881024, at *8 (N.D.N.Y. Sept. 3, 2010) (citing Rosales v. Coughlin, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998) (citation

omitted); Amaker v. Kelly, No. 9:01-CV-877, 2009 WL 385413, at *14-16 (N.D.N.Y. Feb. 9, 2009)). While Plaintiff makes conclusory allegations regarding the seriousness of his medical needs and the lack of adequate care given to him by prison medical personnel and prison officials, there is nothing in the complaint or the record upon which a reasonable juror could infer that Dr. Jin or the facility nurses possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claim. Moreover, there is no basis in the record upon which a reasonable juror could infer that Dr. Jin or the facility nurses were aware of any serious risks to which they allegedly subjected him.

Even dsregarding all of Dr. Jin's reasonable bases for withholding Imitrex, not the least of which was the desire to avoid an overdose or adverse side-effects, Plaintiff, at best, has alleged a medical malpractice claim. The law is clear that medical malpractice is not actionable under the Eighth Amendment. E.g., Hathaway v. Coughlin, 99 F.3d at 553. Accordingly, Plaintiff's claim against Dr. Jin and the facility nurses are dismissed as a matter of law.

**C.   Claims Against Karen Bellamy, Eileen Dinisio, Nurse Goldteck, Nurse Manning, Inspector General Richard Roy, and Dr. Lester Wright**

It is well-settled that for liability to exist under 42 U.S.C. § 1983, a defendant must be "personally involved" in the underlying

conduct or events, meaning that he or she "subjects, or causes [the plaintiff] to be subjected" to an alleged constitutional violation. 42 U.S.C. § 1983; see also Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). Personal liability cannot be imposed on a state official under a theory of respondeat superior. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see also Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).

Defendants argue that Assistant Commissioner Karen Bellamy ("Ass't Comm'r Bellamy"), Eileen Dinisio ("Dinisio"), Inspector General Richard Roy ("I.G. Roy"), and Dr. Lester Wright ("Dr. Wright") lack sufficient personal involvement in the constitutional violations alleged by Plaintiff.

Plaintiff's sole allegation against Dr. Wright is that, upon being informed of Plaintiff's complaint about Dr. Jin, he conducted an investigation and determined that Dr. Jin had rendered satisfactory medical care. With regard to Dinisio, Plaintiff's only allegation against her is that she authored a letter at Dr. Wright's behest informing Plaintiff of Dr. Wright's investigative findings. As to Inspector General Roy, Plaintiff alleges that he wrote to the Inspector General's office and Roy declined to pursue an investigation. Plaintiff explicitly alleges that Roy did not have any personal involvement in any constitutional deprivation. There is no constitutional right to an investigation by government officials. Stone v. Department of

Investigation, No. 91 Civ. 2471 (MBM), 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992) (citing, inter alia, Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985)); accord Lewis v. Gallivan, 315 F. Supp.2d 313, 317 (W.D.N.Y. 2004). Furthermore, there is "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." Gomez, 757 F.2d at 1005. Plaintiff's claims against Dr. Wright, Dinisio, and Inspector General Roy based upon their inadequate investigation or refusal to investigate fail to state a colorable constitutional claim. See Renelique v. Duncan, No. 9:03CV1256, 2007 WL 1110913, at *14 (N.D.N.Y. Apr. 12, 2007) (dismissing inmate's claim that Inspector General Roy failed to investigate an alleged assault upon receipt of inmate's letter complaint; finding the "allegations fail to state a cause of action because [the inmate] has no constitutional right to an investigation, and he has failed to establish the personal involvement of the Inspector General").

As to Ass't Comm'r Bellamy, Plaintiff alleges only that she denied his grievance. "It is clear that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983[,]' particularly if the grievance involves medical care, and the reviewer has no medical training." Hanrahan v. Menon, No. 9:07–CV–610, 2010 WL 6427650, at *12

(N.D.N.Y. Dec. 15, 2010) (quoting Manley v. Mazzuca, 01CV5178, 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citation omitted); footnote omitted; brackets in original). The fact that Ass't Comm'r Bellamy affirmed the denial of Plaintiff's grievance concerning his medical care is insufficient to establish her personal involvement in any alleged constitutional violation. E.g., Foreman v. Goord, 02 Civ. 7089, 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004)).

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment (Dkt #32) is granted, and Plaintiff's complaint is dismissed in its entirety as to all Defendants. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: August 19, 2013
Rochester, New York